**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**



UNITED STATES OF AMERICA

v.                                           Criminal No. 3:13CR144

STEPHEN MAURICE BURKS

**MEMORANDUM OPINION**

Stephen Maurice Burks, a federal inmate proceeding pro se, submitted this motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("§ 2255 Motion," ECF No. 55).[1] Burks contends that his Plea Agreement is void and unenforceable, and that he experienced ineffective assistance of counsel[2] in conjunction with his guilty plea. Specifically, Burks demands relief because:

> Claim One:    "Burks's plea agreement is void and unenforceable because it lacked consideration." (Gov't's Resp. 3, ECF No. 58 (citation omitted).)[3]

---

[1] The Court employs the pagination assigned to Burks's submissions by the CM/ECF docketing system. The Court corrects the spelling, spacing, capitalization, and punctuation in quotations from Burks's submissions.

[2] "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

[3] Burks did not set forth distinct claims in his § 2255 Motion. Moreover, his Memorandum in Support of his § 2255 Motion fails to set forth distinct claims. The Government summarized Burks's grounds for relief as the four claims set forth above. (Gov't's Resp. 3.) Burks adopted the Government's recitation of his claims in his Reply. (Reply 5-11.)

Claim Two:       "Burks did not engage in some of the actions outlined in his sworn statement of facts." (Id. (citation omitted).)

Claim Three:     "Burks's counsel was ineffective because the conduct in the statement of the facts does not constitute a crime."   (Id. (citation omitted).)

Claim Four:      "Burks's appellate counsel was ineffective for failing to raise certain issues on direct appeal."   (Id. (citation omitted).)

The Government responded, asserting that Burks's claims lack merit.  (ECF No. 58.)  Burks has filed a Reply.  (ECF No. 59.) For the reasons set forth below, Burks's § 2255 Motion (ECF No. 55) will be denied.

## I.  PROCEDURAL HISTORY

On August 20, 2013, a grand jury charged Burks, in a one-count Indictment, with mail fraud.  (Indictment 1, ECF No. 1.) On November 20, 2013, the Government filed a one-count Information against Burks, again charging him with mail fraud. (Information 1, ECF No. 15.)  On November 26, 2013, Burks appeared before the United States Magistrate Judge and pled guilty to the one-count Information.   (Plea Agreement ¶ 1, ECF No. 19.)

In the Statement of Facts supporting his Plea Agreement, Burks agreed that "the following facts are true and correct, and

Accordingly, the Court also adopts the Government's recitation of Burks's claims.

2

that had this matter proceeded to trial, the United States would have proven each of them beyond a reasonable doubt:"

1.    From in or around January 2012 through in or around October 2012, within the Eastern District of Virginia and elsewhere, the defendant, STEPHEN MAURICE BURKS, for the purposes of executing the scheme and artifice and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises, did knowingly place and cause to be placed in any post office and authorized depository for mail matter, any matter and thing whatever to be sent and delivered by the Postal Service, specifically on or about March 5, 2012, did cause to be mailed a package-from investor D.S. in Oceanport, New Jersey, to be delivered via U.S. Mail to STEPHEN MAURICE BURKS at Chelsea Financial Group in Richmond, Virginia-containing a $50,000 investment check, in violation of Title 18, United States Code, Section 1341.

2.    At all times relevant to Count One, Defendant STEPHEN MAURICE BURKS was an individual with addresses in Maryland and Richmond, Virginia.

3.    At all times relevant to Count One, BURKS was the Chief Executive Officer of Chelsea Financial Group, LLC ("CFG"), which operated from locations in Maryland and Richmond, Virginia.

#### Scheme and Artifice to Defraud

4.    From in or around January 2008 through in or around January 2013, within the Eastern District of Virginia and elsewhere, the defendant, STEPHEN MAURICE BURKS, did willfully and knowingly devise and intend to devise a scheme and artifice to defraud and for obtaining money and property, specifically by means of misleading investors about his personal background and his use of investor funds in order to obtain investor funds so that BURKS could profit personally.

#### Manner and Means of the Scheme

5.    Starting at least as early as January 2008 and continuing through January 2013, BURKS both individually and through CFG offered and sold investments in several different investment schemes. These schemes included, but were not limited to: Forex (foreign currency exchange) trading; stock

market investments; oil investments; payday lending franchises; and group homes.

Misrepresentations About BURKS's Background

6. Throughout all of the different investment schemes, BURKS made material misrepresentations and omissions to investors about his background. Specifically, BURKS claimed to be an investment professional and/or a registered investment advisor when, in truth and fact, he knew that he was not.

7. BURKS also claimed to have extensive experience and an established history of success in these various investments when, in truth and fact, he knew that he did not.

8. BURKS also claimed to be a CTA, or Certified Tax Accountant, when in truth and fact, he knew that he was not.[4]

9. BURKS also failed to disclose that he was not, in truth and fact, registered with the Commodities Future Trading Commission and lacked any licenses to sell securities.

10. BURKS also failed to disclose to investors that he was a convicted felon.

Misrepresentations About his Use of Investor Funds

11. Throughout all of the different investment schemes, BURKS made material misrepresentations and omissions to investors about his use of investor funds.

12. From January 2008 to March 2011, BURKS obtained at least $1,200,000 in funds from investors in the various schemes.

13. BURKS failed to disclose to investors prior to investment that BURKS retained at least 25% of funds for personal and/or non-investment-related use. BURKS either (a) failed to disclose that he would retain any funds, or (b) falsely told investors that he would retain 1% of assets under management for amounts up to $1,000,000.

---

[4] The Statement of Facts originally stated that Burks had falsely represented that he was a Commodities Trading Advisor. (See Statement of Facts ¶ 8, ECF No. 20.) However, the parties crossed out "Commodities Trading Advisor" and wrote in "Certified Tax Accountant." (Id.) This change was initialed by Burks, his counsel, and the Assistant United States Attorney. (Id.)

14.  In furtherance of the scheme, BURKS placed and caused to be placed in any post office and authorized depository for mail matter the following, in order to be sent and delivered by the Postal Service:

a.  On or about March 5, 2012, BURKS caused a package to be delivered via the U.S. Postal Service from investor D.S. in Oceanport, New Jersey, to STEPHEN MAURICE BURKS at Chelsea Financial Group in Richmond, Virginia, containing a $50,000 investment check for a Forex investment.

15.  BURKS committed the offenses herein knowingly, voluntarily, and without mistake or accident.

(Statement of Facts ¶¶ 1-15, ECF No. 20.)

In his Plea Agreement, Burks "admit[ted] the facts set forth in the statement of facts filed with this plea agreement and agree[d] that those facts establish guilty of the offense charged beyond a reasonable doubt."  (Plea Agreement ¶ 2.) Burks also agreed that he was "satisfied that [his] attorney ha[d] rendered effective assistance."  (Id. ¶ 3.)

During his Rule 11 proceedings, Burks understood that he was waiving his right to proceed by way of indictment.  (Nov. 26, 2013 Tr. 5.)  Burks confirmed his understanding of the charge and the penalties for the charge.  (Nov. 26, 2013 Tr. 8-9.)  Burks indicated that he was satisfied with what counsel had done for him in his case.  (Nov. 26, 2013 Tr. 10.)  He also confirmed that he was waiving certain trial rights.  (Nov. 26, 2013 Tr. 10-12.)  Burks understood that the Court would consider

the applicable sentencing guidelines in determining his sentence. (Nov. 26, 2013 Tr. 17-19.) Finally, Burks agreed that the Statement of Facts supporting his plea was correct and that he signed the Statement of Facts because the information contained therein was true. (Nov. 26, 2013 Tr. 21.) At the conclusion of the Rule 11 proceedings, the Magistrate Judge found that Burks "[was] fully competent and capable of entering an informed plea, that he [was] aware of the nature of the charges and the consequences of the plea, and that the plea of guilty [was] knowing and voluntary and supported by an independent basis in fact . . . ." (Nov. 26, 2013 Tr. 21.)

On March 26, 2014, the Court entered judgment against Burks and sentenced him to 115 months of imprisonment. (J. 2, ECF No. 43.) "On appeal, Burks assert[ed] that the district court erred by departing upward in calculating his sentenced based on the United States Sentencing Guidelines . . . and that trial counsel was ineffective for failing to sufficiently develop the record at sentencing." United States v. Burks, 586 F. App'x 141, 142 (4th Cir. 2014). The United States Court of Appeals for the Fourth Circuit concluded that Burks's waiver of appellate rights precluded him from challenging the calculation of his Guidelines range, and declined to review Burks's ineffective assistance claim on direct appeal. Id.

6

## II.  VALIDITY OF PLEA AGREEMENT AND GUILTY PLEA

The Court recognizes that the representations of the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Therefore, "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) (citations omitted). The Fourth Circuit has admonished that "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Id. at 221-22. No circumstances exist here that would lead the Court to consider Burks's prior sworn statements as other than truthful.

In Claim One, Burks alleges that his "plea agreement is void and unenforceable because it lacked consideration." (Gov't's Resp. 3.) Specifically, Burks contends that "a quick reference as to the docket sheet would reveal that there in fact was only a single indictment and that the government has violated the task it itself offered for consideration . . . dismiss the indictment." (Reply 8.) Burks's claim, however, is belied by the record before the Court.

As noted above, on August 20, 2013, the grand jury returned an Indictment against Burks, charging him with one count of mail fraud. (Indictment 1.) The Indictment, however, did not explicitly state that Burks's conduct was a violation of the federal mail fraud statute, 18 U.S.C. § 1341. Therefore, on November 20, 2013, the Government filed the one-count Information, again charging Burks with mail fraud. (Information 1.) The Information, however, specifically stated that Burks's conduct was a violation of 18 U.S.C. § 1341. (Id.)

In his Plea Agreement, Burks agreed that he understood that "[a]s a condition of the execution of this agreement and the Court's acceptance of [his] plea of guilty, the United States [would] move to dismiss the pending indictment against [Burks]." (Plea Agreement ¶ 10.) Burks also understood that the Government "[would] not further criminally prosecute [him] in

8

the Eastern District of Virginia for the specific conduct described in the information or statement of facts." (Id. ¶ 9.) During the Rule 11 colloquy, Burks confirmed his understanding that in exchange for his guilty plea, the Government "[was] agreeing that it [would] not further criminally prosecute [him] in the Eastern District of Virginia for the specific conduct that [was] described in the information and the statement of facts, and that they [were] agreeing at the appropriate time to move to dismiss the pending indictment." (Nov. 26, 2013 Tr. 14-15, ECF No. 50.)  The record clearly reflects that Burks understood what the Government agreed to provide as consideration in exchange for his guilty plea.

Moreover, Burks is mistaken in his belief that the Government agreed to move for the dismissal of the very charge to which he pled guilty.  Burks pled guilty to a one-count Information charging him with mail fraud.  (Plea Agreement ¶ 1.) At Burks's sentencing, the Government moved for dismissal of the pending Indictment that the Grand Jury had previously returned against Burks.  (Mar. 20, 2014 Tr. 56.)  The Court granted the Government's motion.  (Mar. 20, 2014 Tr. 56.)  Thus, it is clear that the Government agreed to move for the dismissal of the pending Indictment, not the Information to which Burks pled guilty.

9

In sum, the Government clearly provided consideration in exchange for Burks's guilty plea. Moreover, it is clear from the record that Burks comprehended that consideration. Burks's statements to the contrary are "palpably incredible" in light of his sworn statements during Rule 11 proceedings. <u>Lemaster</u>, 403 F.3d at 222 (citation omitted). Thus, Claim One lacks merit, and will be dismissed.

In Claim Two, Burks alleges that his guilty plea is invalid because he "did not engage in some of the actions outlined in his sworn statement of facts." (Gov't's Resp. 3 (citation omitted).) Burks has attached an "AFFIDAVIT OF TRUTH" to his Memorandum in Support of his § 2255 Motion. (ECF No. 56-1, at 1-3.) In the "AFFIDAVIT OF TRUTH," Burks essentially challenges every response he provided during the Rule 11 proceedings. For example, Burks states that he "never alleged or stated to any [one] that [he] was or ha[s] been a CTA or COMMODITIES TRADING ADVISOR." (<u>Id.</u> at 1.) He also argues that "at no time ha[s he] ever bought and sold commodities or investment commodities," (<u>id.</u>), and indicates that "[he] ha[s] never alleged or stated to anyone that [he] was or ha[s] been an investment professional and/or a registered investment advisor." (<u>Id.</u>) Burks also claims that counsel never advised him with respect to the "meaning of 'relevant conduct'" and "never explained the

10

elements of the crime as found in 18 USC 1341." (Id. at 2.) Burks contends that because of these misrepresentations and errors of counsel, his guilty plea is invalid. (Mem. Supp. § 2255 Mot. 17-19.)[5] Burks's claim, again, is belied by the record.

In the Statement of Facts, the parties crossed out "Commodities Trading Advisor" in paragraph eight, and wrote in "Certified Tax Accountant" in its place. (Statement of Facts ¶ 8.) This change was initialed by Burks, his counsel, and the Assistant United States Attorney. (Id.) The Statement of Facts indicated that Burks "claimed to be an investment professional and/or a registered investment advisor when, in truth and fact, he knew that he was not." (Id. ¶ 6.) Moreover, Burks "failed to disclose that he was not, in truth and fact, registered with the Commodities Future Trading Commission and lacked any licenses to sell securities." (Id. ¶ 9.) By signing the Statement of Facts, Burks agreed that the facts therein were "true and correct, and that had this matter proceeded to trial, the United States would have proven each of them beyond a reasonable doubt." (Id. at 1.)

In his Plea Agreement, Burks "admit[ted] the facts set forth in the statement of facts filed with this plea agreement

_____

[5] The Court discusses his allegations of ineffective assistance of counsel infra in Part III.A.

11

and agree[d] that those facts establish[ed] guilt of the offense charged beyond a reasonable doubt." (Plea Agreement ¶ 2.) During the Rule 11 colloquy, the Assistant United States Attorney placed on the record the fact that the parties had changed "Commodities Trading Advisor" to "Certified Tax Accountant" in paragraph eight of the Statement of Facts. (Nov. 26, 2013 Tr. 4.) When asked by the Magistrate Judge, Burks agreed that he had signed the Statement of Facts "because the information in the document [was] true." (Nov. 26, 2013 Tr. 21.) Moreover, Burks indicated that there was nothing in the Statement of Facts that he believed was wrong or needed to be corrected. (Nov. 26, 2013 Tr. 21.) Burks also denied that "there [was] anything in these facts that [he thought] was wrong that should be explained or taken out or added in . . . ." (Nov. 26, 2013 Tr. 21.)

Quite simply, the statements Burks makes in his "Affidavit of Truth" in an attempt to aver that his guilty plea is invalid are "palpably incredible" in light of his sworn statements made during Rule 11 proceedings. Lemaster, 403 F.3d at 222. Thus, Claim Two will be dismissed as meritless.

12

### III. CLAIMS RAISING INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of Strickland, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. Id. at 697.

In the context of a guilty plea, the Supreme Court has modified this second prong of Strickland to require the defendant to "show that there is a reasonable probability that,

but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). As previously explained, in the absence of extraordinary circumstances, the truth of the sworn statements Burks made during his Rule 11 hearing is "conclusively established." Lemaster, 403 F.3d at 221-22. Once again, no circumstances exist here that would lead the Court to consider Burks's prior sworn statements as other than truthful.

### A.    Trial Counsel

In Claim Three, Burks alleges that counsel "was ineffective because the conduct in the statement of facts does not constitute a crime." (Gov't's Resp. 3 (citation omitted).) Specifically, Burks contends that "[t]he legitimate business transactions that the [G]overnment [alleged were] fraudulent [could] not stand the test of accounting or real investigation by diligent Defense Counsel." (Mem. Supp. § 2255 Mot. 20.) According to Burks, if counsel had "realized all the factually incorrect assertions to the facts as they related to the charges and sentencing[,] Counsel could have saved [Burks] from pleading guilty based on such an ultra vir[e]s contract." (Id.)

The Court has already found that Burks's guilty plea is not invalid because Burks freely admitted that he engaged in the behavior set forth in the Statement of Facts. (See Nov. 26,

14

2013 Tr. 21.)  Even if Burks did engage in "legitimate business transactions," as he claims, he does not dispute that he made misrepresentations regarding his background and his use of investor funds.  (See Statement of Facts ¶¶ 6-13.)  Any argument otherwise by counsel would have been meritless, and counsel cannot be ineffective for failing to raise a meritless argument that contradicts Burks's sworn response.  See United States v. Moore, 934 F. Supp. 724, 731 (E.D. Va. 1996).

Burks also suggests that counsel was ineffective by "not negotiat[ing] the plea at all."  (Mem. Supp. § 2255 Mot. 13.) Burks asserts that he did not receive the Plea Agreement "until 15 minutes prior to the judge coming in to the court to have [him] swear to its validity."  (Id.)  Burks also contends that counsel failed to make sure that Burks "knew what different terms, and their use, meant in the process of his taking a plea . . . ."  (Id. at 23.)  Burks also submitted an "Affidavit of Truth" that contains even more allegations that counsel failed to render effective assistance during the guilty plea proceedings.  (ECF No. 56-1, at 2.)[6]  A notary public's seal

---

[6] For example, Burks alleges that "[he] was never counseled as to the meaning of 'relevant conduct.'"  (ECF No. 56-1 at 2.) Burks also claims that "[c]ounsel never explained the elements of the crime as found in 18 USC 1341."  (Id.)  He also contends that "[c]ounsel never informed [him] that [he] could have pled guilty without the plea agreement to get the same sentence, and retain all the rights given up pursuant to the plea agreement."

appears on the third page of Burks's "Affidavit of Truth." (ECF No. 56-1, at 3.) However, Burks has not sworn to its contents under penalty of perjury, and there is no indication that the notary administered an oath to Burks. Thus, Burks's "Affidavit of Truth" contains merely unsworn allegations. Cf. McCoy v. Robinson, No. 3:08CV555, 2010 WL 3735128, at *2 (E.D. Va. Sept. 22, 2010) (alterations in original) ("'[M]erely notarizing [a] signature does not transform a document into [an] affidavit that may be used for summary judgment purposes.'" (quoting Nissho-Iwai Am. Corp. v. Kline, 845 F.2d 1300, 1306-07 (5th Cir. 1998))).

These unsupported allegations are belied by Burks's sworn statements during the Rule 11 proceedings. Before proceedings began, the Magistrate Judge took a fifteen-minute recess to allow Burks further time to discuss the Plea Agreement with counsel. (Nov. 26, 2013 Tr. 2.) When asked by the Magistrate Judge, Burks confirmed that he had received "a sufficient opportunity to discuss with [his] attorney everything about [his] case, [including] any possible defenses as well as talking about [his] decision of whether or not to plead guilty." (Nov. 26, 2013 Tr. 9-10.) Burks affirmed that he was "satisfied with

(Id.) Burks further suggests that "[c]ounsel simply and with disregard of [his] rights as afforded under the Constitution did fail[] to inform and represent the process, facts, law, etc., in getting [him] to agree to plead to the charges . . . ." (Id.)

what [his] attorney ha[d] done for [him]" and "believe[d] that [counsel had] done everything [he] needed so [he could] make an informed choice about how to proceed in [his] case." (Nov. 26, 2013 Tr. 10.)

Burks's unsworn and unsupported allegations in his "Affidavit of Truth" that trial counsel rendered ineffective assistance during guilty plea proceedings are "palpably incredible" in light of his sworn statements during Rule 11 proceedings. Lemaster, 403 F.3d at 222. Because Burks has failed to demonstrate deficient performance and resulting prejudice, Claim Three will be dismissed.

### B.   Appellate Counsel

In Claim Four, Burks contends that "appellate counsel was ineffective for failing to raise certain issues on direct appeal." (Gov't's Resp. 3.) Burks indicates that he "submitted proposed arguments to counsel for the purpose of appeal." (Mem. Supp. § 2255 Mot. 26.) Burks has attached a document, called "Case Notes for Stephen Burks," which he asserts he provided to appellate counsel for the purpose of preparing Burks's appeal ("Case Notes," ECF No. 56-2).

"In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the applicant must normally demonstrate" that appellate counsel

17

performed deficiently and that a reasonable probability of a different result exists. Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (citing Strickland, 466 U.S. at 688, 694). Counsel had no obligation to assert all non-frivolous issues on appeal.

Burks contends that counsel should have raised the following issues: (1) Burks's lack of participation in plea negotiations (Case Notes at 1); (2) disputes with the sworn Statement of Facts supporting Burks's plea (id. at 1-3); and, (3) that the Court erred by granting the Government's motion for a continuance of the sentencing hearing and denying Burks's motion for a continuance (id. at 2-3.)

Counsel prudently decided not to advance these frivolous arguments on appeal. With respect to Burks's claims regarding his lack of participation in plea negotiations and his disputes with the sworn Statement of Facts supporting his guilty plea, Burks is bound by his statements during the Rule 11 colloquy. See Lemaster, 403 F.3d at 221-22. During the Rule 11 colloquy, Burks clearly stated that he had received "a sufficient opportunity to discuss with [his] attorney everything about [his] case, [including] any possible defenses as well as talking about [his] decision of whether or not to plead guilty." (Nov. 26, 2013 Tr. 9-10.) Moreover, Burks agreed that he had signed the Statement of Facts "because the information in the document

18

[was] true." (Nov. 26, 2013 Tr. 21.) Any attempt by appellate counsel to argue otherwise would have been squarely rejected by the Fourth Circuit. Furthermore, Burks has failed to demonstrate how the Court's decision to grant the Government's motion for a continuance but deny Burks's motion for such "prejudiced his defense" in any way. Hill v. Ozmint, 339 F.3d 187, 196-97 (4th Cir. 2003).

Burks has not demonstrated any prejudice from counsel's failure to raise his frivolous arguments on appeal. Accordingly, Claim Four will be dismissed.

### IV. CONCLUSION

For the foregoing reasons, Burks's § 2255 Motion (ECF No. 55) will be denied. The action will be dismissed.

An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to

proceed further.'" <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)
(quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).
Burks has not satisfied this standard. Accordingly, the Court
will deny a certificate of appealability.

The Clerk is directed to send a copy of the Memorandum
Opinion to Burks and counsel of record.

It is so ORDERED.

/s/     REP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: September 14, 2016